IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J&J SPORTS PRODUCTIONS, INC.,

   Plaintiff,

v.                                          Civil Action No. 8:18-cv-01283-PX

LACASA DEL MOFONGO LLC, *et al.*,

   Defendants.

## MEMORANDUM OPINION

Pending before the Court is Plaintiff J&J Sports Productions, Inc.'s ("J&J") motion for default judgment against Defendants LaCasa Del Mofongo LLC ("LaCasa") and Domingo Manana ("Manana"), seeking money damages. ECF No. 9. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 as no hearing is necessary. For the reasons set forth below, the Court grants Plaintiff's motion for default judgment.

**I.    Background**

This case involves alleged violations of the Communications Act of 1934 arising from the unlicensed televised exhibition of a boxing match. 47 U.S.C. § 605. J&J, a distributor of sports and entertainment programming, avers that it held exclusive commercial distribution rights to the Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program (the "Program"), which took place on May 2, 2015. ECF Nos. 1 ¶15. J&J had entered into sublicensing agreements with various commercial establishments such as bars and restaurants in which J&J granted the rights to broadcast the Program. *Id.* ¶16. Defendants had no such sublicensing agreement with J&J. ECF No. 9-4 at 2.[1]

---

[1] Defendant Manana owns and operates LaCasa restaurant. ECF No. 1 ¶¶13, 18-20.

Tracy Green, a private investigator hired by J&J, declared via sworn affidavit to having observed the Program's broadcast while at LaCasa on May 2, 2015. ECF No. 1-1 at 2. Green did not have to pay a cover charge to enter LaCasa, and during Green's fifteen-minute stay, Green saw about twenty-one to twenty-four customers at LaCasa, which has an estimated maximum capacity of about fifty persons. *Id.* at 2-3. Green also saw thirteen televisions at LaCasa. *Id.* at 2. According to J&J's rate card for the Program, had J&J entered into a sublicensing agreement with LaCasa, LaCasa would have owed J&J $3,000 based on a "minimum capacity" of 1-100 persons. ECF No. 9-8.

On May 1, 2018, J&J filed suit against Defendants, alleging violations of the Communications Act of 1934, 47 U.S.C. § 605, and seeking a total of $170,000 in damages. ECF No. 1. Defendants Manana and LaCasa were properly served on May 10, 2018, and May 13, 2018, respectively. ECF Nos. 4, 5. Defendants failed to respond to or otherwise contest J&J's claims. ECF No. 9-4 at 2. J&J therefore requested entry of default, which the clerk entered on August 20, 2018. ECF No. 8. On August 21, 2018, J&J sent Defendants notice of the entry of default by certified mail, to which Defendants did not respond. ECF No. 9-1. J&J now moves for default judgment, requesting $3,000 in statutory damages, $9,000 in enhanced damages, and $2,245 in attorneys' fees and costs. ECF No. 9.

**II.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Thereafter, the court may enter default judgment at J&J's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). J&J, however, is not automatically entitled to default

judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, DKC 11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, TDC 15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015). Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), a default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). "Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422.

**III.     Analysis**

The Court finds that default judgment is proper. Section 605 of the Communications Act prohibits the unauthorized interception or receipt of certain radio communications, including digital satellite television transmissions. 47 U.S.C. § 605; *see also J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849 F. Supp. 2d 586, 588 n.3 (D. Md. 2012). Accepting as true the Complaint allegations, Defendants unlawfully intercepted and displayed the Program at LaCasa without J&J's authorization on May 2, 2015. *Joe Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, No. CCB-11-3272, 2012 WL 5879127, at *4 (D. Md. Nov. 19, 2012). Accordingly, J&J has established Defendants' liability under § 605. *Id.*

With regard to damages, 47 U.S.C. § 605(e)(3)(C)(i) allows J&J to recover either actual damages or statutory damages for the unauthorized interception and distribution of radio communications. J&J seeks statutory damages, and in support, relies on investigator Green's

observations and the absence of a sublicensing agreement with Defendants authorizing exhibition of the Program. Statutory damages should account for an approximation of the sum lost to Plaintiff due to the violation. *J & J Sports Prods. v. Mumford*, No. DKC-10-2967, 2012 WL 6093897, at *2 (D. Md. Dec. 6, 2012). "Consistent with prior case law in this District, the Court will accept the cost to purchase the Program as the direct loss to J & J Sports Productions." *J & J Sports Prods., Inc. v. El Rodeo Restaurant*, *LLC*. No. PJM-15-172, 2015 WL 3441995, at *2 (D. Md. May 26, 2015). J&J approximates the rate it would have charged Defendants to broadcast the Program, and submits a rate card to that effect to support its requested $3,000. ECF Nos. 9 at 1, 1-1 at 11. Statutory damages in the amount of $3,000 is appropriate and the Court will award it.

In addition to statutory damages, J&J requests enhanced damages of $9,000.[2] Section 605(e)(3)(C)(ii) authorizes enhanced damages of up to $100,000 where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . ." ECF No. 9 at 2. To determine whether enhanced damages is appropriate, courts consider any evidence of defendant's willfulness, whether defendant engaged in repeated violations over an extended period of time, the significance of the unlawful monetary gains, and whether defendant advertised the broadcast or charged admission or premiums for food and drinks. *J&J Sports Prods., Inc. v. El Rodeo Restaurant*, No. PJM 15-172, 2015 WL 3441995, at *3 (D. Md. May 26, 2015).

---

[2] Plaintiff also originally sought money damages for violations of 47 U.S.C. § 553, but has not renewed that request in its motion for default judgment. Damages are not available under both 47 U.S.C. § 605 and § 553 for the same conduct, as Plaintiff well knows, having filed roughly 54 cases in this district alleging facts similar to this case. *See, e.g.*, *J & J Sports Productions, Inc. v. Intipuqueno, LLC.*, No. DKC 15-1325, 2016 WL 1752894 (D. Md. May 3, 2016) ("As explained in numerous prior opinions from judges in this district, however, "[g]enerally [ ] plaintiffs cannot recover under both [§§ 605 and 553] for the same conduct [.]").

Here, the Court can easily conclude that the Defendant's interception of the Program was willful. ECF No. 1 ¶18. After all, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *J & J Sports Prods., Inc. v. Castro Corp.,* No. 11-00188-AW, 2011 WL 5244440, at *4 (D. Md. Nov. 1, 2011) (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). However, no evidence exists that Defendants realized significant financial profit from broadcasting the Program[3] or had committed any other such violation before or since the broadcast of the Program. In short, J&J has failed to demonstrate that enhanced damages are appropriate. The Court therefore denies J&J's request.

J&J is entitled, however, to costs and reasonable attorneys' fees as the prevailing party in this action. *See* 47 U.S.C. § 605(e)(3)(B)(iii). "The party seeking fees bears the burden of proving the reasonableness of the amount sought." *J & J Sports Prods. v. Mumford*, No. DKC-10-2967, 2013 WL 210623, at *2 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009)). J&J has submitted a detailed affidavit and a statement of costs and fees totaling $2,245.00. *See* ECF Nos. 9-9, 9-10, 9-11. The Court finds that this amount is reasonable because the hours expended are modest and the hourly rate is within the acceptable range. Accordingly, J&J will be awarded attorneys' fees and costs of $2,245.00.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment will be granted and judgment will be entered in Plaintiff's favor for $5,245.00. A separate Order follows.

| | |
|---|---|
| 11/19/2018 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |

---

[3] In fact, J&J's own investigator did not pay a cover to enter LaCasa.